UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| RITA J. MANCHETTE, | ) |
| (Social Security No. XXX-XX-4277), | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 3:10-cv-27-RLY-WGH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM DECISION AND ORDER**

**I. Background**

Plaintiff, Rita J. Manchette, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on September 11, 2007, alleging disability since September 2, 2007. (R. 13, 120-126). The agency denied Plaintiff's application both initially and on reconsideration. (R. 84-87, 94-96). Plaintiff appeared and testified at a hearing before Administrative Law Judge Arline Colon on February 19, 2009. (R. 25-70). Plaintiff was represented by an attorney. A vocational expert ("VE") also testified.

(R. 25, 58-68). On March 3, 2009, the ALJ issued her opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the economy. (R. 13-20). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-4). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on February 16, 2010, seeking judicial review of the ALJ's decision.

Plaintiff was 54 years old at the time of the ALJ's decision. She had a high school education. (R. 31). Her past relevant work experience included work as a housekeeper, waitress, kitchen helper, and harness assembler. (R. 48-51).

## II. Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v.*

*Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**III. The ALJ's Decision**

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that Plaintiff was insured for DIB through December 31, 2012. (R. 15). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had six impairments that are classified as severe: positive rheumatoid

factor test; polyarthropathy; osteoarthritis of the hands; left rotator cuff tear with history of arthroscopic surgery; history of hepatitis C, treated; and history of rectal bleeding. (R. 15). The ALJ concluded that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). The ALJ determined that Plaintiff's testimony was not fully credible. (R. 18). The ALJ then found that Plaintiff retained the following RFC: she can lift and/or carry 20 pounds occasionally and ten pounds frequently; work eight hours a day in a seated, standing, or ambulatory position; unlimited push and/or pull, other than as shown for lift and/or carry; occasionally stoop, kneel, crouch, crawl, balance, or climb ramps or stairs; never climb ladders, ropes, or scaffolds; cannot work around unprotected heights; but can frequently handle and finger bilaterally. Plaintiff must be allowed the opportunity to sit or shift position for a minute or two at the workstation every 30 to 45 minutes. (R. 17-19). The ALJ determined that, based on this RFC, Plaintiff is capable of performing past relevant work as a housekeeper and waitress. (R. 19-20). The ALJ, therefore, concluded that Plaintiff was not under a disability. (R. 20).

**IV. Discussion**

Plaintiff has raised five issues, as follows:

1. Whether the ALJ's assessment of Plaintiff's RFC was supported by substantial evidence.

2. Whether the ALJ gave proper weight to the opinion of Dr. Conway.

4

3. Whether the ALJ failed to give adequate weight to Plaintiff's depression in her RFC assessment.

4. Whether the ALJ's credibility determination was patently wrong.

5. Did the ALJ properly apply the VE's testimony in her step four analysis?

**Issue 1: Whether the ALJ's assessment of Plaintiff's RFC was supported by substantial evidence.**

Plaintiff first argues that Plaintiff's RFC was not supported by substantial evidence. However, the ALJ's RFC assessment is well supported by substantial medical evidence. A state agency physician evaluated Plaintiff's medical records and determined that Plaintiff retained the RFC for the full range of light work except that she could not climb ladders, ropes, or scaffolds and could only perform all other postural activities occasionally. (R. 19, 471-77). Dr. El Ramahi examined Plaintiff in December 2006 thru May 2007 and was unsure whether Plaintiff's "diagnosis" would qualify her for disability. (R. 423, 522). Dr. El Ramahi opined that while Plaintiff exhibited difficulty with flexion of her right knee and
osteoarthritic changes in her right hand, Plaintiff's grip and fist strength were not limited. (R. 422, 521). Dr. El Ramahi also noted mild swelling of Plaintiff's finger joints and mild degenerative changes to Plaintiff's knees and hands. (R. 427-28, 557-59). Dr. Baumberger, consulting examining physician, evaluated Plaintiff in December 2007, and found that Plaintiff's left hand strength was normal, but he could not evaluate Plaintiff's right hand as she refused to flex it. (R. 465). However, Dr. Baumberger observed that

Plaintiff was fully able to flex her right wrist when reaching for her shoes and coat, write with her dominate right hand, and oppose her thumb to finger when grabbing her purse and coat. (R. 465). Dr. Baumberger opined that Plaintiff could perform light work, but should not climb ladders or work around unprotected heights. (R. 466).

Plaintiff points to a medical report submitted by treating physician Dr. Conway that states: "I believe [Plaintiff's] disability is primarily related to her hand arthritis, which is quite limiting," and "I also believe that depression contributes to [Plaintiff's] disability." (R. 504). However, as described below in Issue 2, the ALJ was not obligated to adopt this assessment, as Dr. Conway's opinion is not supported by objective medical evidence and is contradicted by other objective medical evidence in the record. Given the substantial medical evidence in the record that supports the ALJ's RFC assessment, the court concludes that the ALJ's decision was proper.

**Issue 2: Whether the ALJ gave proper weight to the opinion of Dr. Conway.**

Plaintiff argues that the ALJ erred by not giving the opinion of Dr. Conway controlling weight. Although Dr. Conway is Plaintiff's treating physician and has opined that Plaintiff has a disability, the ALJ is not required to adopt Dr. Conway's opinion because it is not supported by objective medical evidence and is contradicted by other substantial medical evidence in the record. (R. 504). *See* 20 C.F.R. § 404.1527.

In this case, the ALJ's rejection of Dr. Conway's opinions is supported by substantial evidence. Dr. Conway's opinions were inconsistent with the opinions of other doctors who treated the Plaintiff. Dr. Bailey opined that even though Plaintiff

6

complained of joint pain and swelling, there were no obvious joint deformities and no hot or swollen joints. (R. 333-34). Dr. El Ramahi opined that while Plaintiff complained of finger and knee swelling, he noted only mild swelling of her finger joints and mild degenerative changes. (R. 426-27). On a follow-up visit, Dr. El Ramahi noted that Plaintiff's grip and fist strength were not limited, and he was unsure whether Plaintiff's diagnosis would qualify her for disability. (R. 422-23). Dr. Baumberger opined that Plaintiff had good use of her arms and hands in terms of grasping, pushing, pulling, or manipulating. (R. 466). Dr. Baumberger also observed Plaintiff perform manipulative activities with both hands and other activities that supported his conclusions. (R. 465). As stated earlier, Dr. Conway wrote that he believed Plaintiff's disability is primarily related to her hand arthritis, which is very limiting, and that Plaintiff's depression also contributes to her disability. (R. 504). However, Dr. Conway provided no medical evidence to support his opinion. He stated that Plaintiff had some difficulty walking, squatting and rising back up, but provided no specific limitations related to Plaintiff's impairments. (R. 291). Therefore, given the lack of medical evidence provided to support Dr. Conway's opinion, the court finds that the ALJ gave the proper weight to Dr. Conway's opinion.

**Issue 3: Whether the ALJ failed to give adequate weight to Plaintiff's depression in her RFC assessment.**

Plaintiff argues that the ALJ failed to give adequate weight to the effects of Plaintiff's depression on her ability to work. However, Plaintiff did not present any

7

substantial medical evidence that provides for any work-related limitations with regard to her depression. Dr. Pressner, a state agency reviewing psychologist, opined that while Plaintiff had mild restrictions in activities of daily living; mild difficulties in social functioning, concentration, persistence, or pace; and had no episodes of decompensation, Plaintiff's condition was not severe. (R. 342, 352-54). Dr. Larsen, a state agency reviewing psychologist, opined that Plaintiff had no restrictions in activities of daily living and no difficulties in concentration, persistence, or pace; mild difficulties in social functioning; and no episodes of decompensation. Dr. Larsen noted that Plaintiff reported that her medication helped her depression and that she did not currently have any symptoms related to her depression. (R. 404). Plaintiff also told Dr. Larsen that she is only limited by her physical condition, not her depression. (R. 404). Therefore, Dr. Larsen concluded that Plaintiff's mental condition was not severe. (R. 404). Furthermore, Plaintiff acknowledged during the hearing that she was not in any type of counseling and that none had been recommended. (R. 52). The ALJ's conclusion as to Plaintiff's symptoms of depression is supported by substantial evidence and, therefore, is affirmed.

**Issue 4: Whether the ALJ's credibility determination was patently wrong.**

Plaintiff argues that the ALJ conducted a flawed credibility determination. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an

evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These

9

> provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added; footnote omitted). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*.

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ's assessment of Plaintiff's credibility can be found at R. 18-19 and was as follows:

> The claimant testified to sleep problems and asserted that she only gets four hours of sleep even with medication. She stated she bleeds daily from her rectum and goes to the restroom every 15 minutes when she is bleeding. She complained of severe knee pain that she rated at an 8-9 on a scale in which 10 is the worst pain imaginable. The claimant stated she took hydrocodone that helped somewhat with her knee pain. She also stated that she applied heat to her knees but this did not help her pain. The claimant also stated that she walks 10 minutes in order to keep her knees from becoming too stiff. The claimant also testified that she has swelling in her knees and every finger. She stated that she cannot make a fist or write because of the swollen joints in her fingers. She also reported she had blurred vision twice a week but had no explanation for this. The claimant testified she can lift her hands to the shoulder with her elbows bent but can not lift her arms chest high.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The medical evidence of record does not fully support the claimant's allegations. In regard to the claimant's complaints of knee pain, the undersigned notes that MRI scans of her right knee performed on May 21, 2007, showed only a small amount of joint fluid (Exhibit 13F 19). Dr. Baumberger noted that examination of the claimant's knees revealed no crepitus. He also noted the claimant was able to bear all of her weight with either leg when climbing on and off the examining table. He noted the claimant performed a three quarter squat maneuver without difficulty and could get in and out of a chair without difficulty. He also observed that the claimant ambulated with a normal gait that was not unsteady, lurching or unpredictable (Exhibit 15F). In regard to the claimant's complaints of swollen and painful finger joints, the undersigned notes that x-rays of both of her hands showed only mild narrowing of the interphalangeal joints (Exhibit 13F 20). Dr. Baumberger observed that the claimant was able to make a fist, pickup [sic] coins, button clothing . . . . He also noted the claim

11

> [sic] was able to oppose each digit of her left hand to the thumb of her left hand. These activities would tend to indicate the claimant had no significant limitation in the use of her left hand and its digits. Dr. Baumberger did note that the claimant refused to do any of the aforementioned activities with her right hand. However, he did note the claimant was able to pick up her purse and grab her coat with her right hand. He also noted she was able to write with her dominant right hand (Exhibit 15F).
>
> Other factors also do not support the claimant's allegations. The claimant goes to church which normally involves sitting through a service. Although this activity is fairly non-exertional, it would still be difficult to perform with the level of pain alleged by the claimant. The claimant also testified that one of her daily activities is reading the Bible. This activity would involve holding the Bible, opening it and turning pages. Performing these activities on a daily basis is inconsistent with the claimant's allegation that all of the joints on both of her hands are swollen and painful. The claimant also volunteered to handle money at the Fall Festival for her church. Again while this is a sedentary activity it involves fine manipulation handling currency and is also inconsistent with the claimant's allegations. In addition, in her testimony the claimant admitted receiving unemployment insurance benefits since her alleged onset date after she was laid off from Holiday Inn Express where she was a housekeeper. In order to receive such benefits the claimant had to verify that she was able, available and actively seeking employment. Furthermore, the claimant also admitted that while receiving unemployment insurance benefits she looked for jobs in housekeeping and waitressing. All of the aforementioned activities are inconsistent with the claimant's allegations that she is unable to work.

( R. 18-19). While this was not a perfect credibility determination, it was clearly not patently wrong. The ALJ looked at the objective medical evidence as well as several other factors and reasonably concluded that Plaintiff's complaints of pain were not fully credible. While the ALJ did not have to discuss every piece of medical evidence, the court notes that the opinions of Dr. Baumberger and Dr. Fife were substantially similar in that they both found that Plaintiff could occasionally lift 20 pounds and lift ten pounds

continuously and that Plaintiff could sit, stand, or walk about six hours in an eight-hour workday. Both doctors found that Plaintiff could pull or push, but she could not climb ladders, ropes, or scaffolds. (R. 19, 462-66, 471-77). The opinions of Dr. Baumberger (R. 462-66) and Dr. El Ramahi (R. 422-28) indicate that Plaintiff's muscle strength was normal in her left hand, but Plaintiff refused to flex her right hand for Dr. Baumberger, while Dr. El Ramahi found that her strength was normal in her right hand. (R. 465, 427). However, Dr. Baumberger observed that Plaintiff was fully able to flex her wrist when picking up her coat and purse. (R. 465). Dr. El Ramahi noted mild swelling of Plaintiff's finger joints and x-rays showed mild degenerative changes in her knees and hands. (R. 427-28).

The ALJ noted that the Plaintiff's daily activities included going to church, reading the Bible, and volunteering to handle money at the Fall Festival for her church. (R. 18-19). The ALJ found that, while these activities were sedentary in nature, these activities were inconsistent with the Plaintiff's claim of painful swollen joints on both hands. (R. 18-19).

The ALJ also noted that the Plaintiff had received unemployment insurance benefits since her alleged onset date after she was laid off. (R. 19). However, in order to receive unemployment benefits, the Plaintiff had to verify that she was able, available, and actively seeking employment, and Plaintiff admitted to receiving unemployment benefits while pursuing other jobs in housekeeping and waitressing. (R. 19). The court concludes that given the fact that the ALJ relied on Plaintiff's activities of daily living,

13

lack of objective medical evidence, and Plaintiff's receipt of unemployment benefits, the assessment of Plaintiff's credibility was not patently wrong and that the decision of the ALJ must be affirmed.

**Issue 5: Did the ALJ properly apply the VE's testimony in her step four analysis?**

Finally, Plaintiff argues that the ALJ committed error in her step four evaluation by tendering incomplete hypothetical questions to the VE and by misinterpreting or misapplying the VE's answer in her analysis.

It is true that hypothetical questions "posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994). The VE testified that Plaintiff could perform her past work as a waitress, wire harness assembler, and light work as a motel housekeeper, with the limitations set forth in the RFC. (R. 63). The ALJ then asked questions of the VE regarding the frequency of handling and fingering needed to perform the positions available.[1] The VE opined that frequent use of handling and fingering would be needed for waitressing and housekeeping positions, while continuous handling and fingering would be needed for the wire harnessing position. (R. 64). Therefore, with the limitation of only frequent handling and fingering, the only two positions remaining were the waitressing and housekeeping positions. (R. 64). In response to other questions posed by the ALJ, the VE also testified that a person

---

[1] R. at 64: "So if I add the limitation of an addition to what I stated with light work . . . and she could only do frequent handling and fingering bilaterally, the two jobs that would remain would be housekeeping and waitress?"

would be able to sit for a minute or two at the most in the waitressing and housekeeping positions. (R. 65). The VE also testified that waitresses do not have the ability to sit down during busy times; however, there are down times when they could briefly sit. (R. 66).

From these portions of the hearing transcript, the court concludes that the ALJ did include in her questions to the VE limitations concerning use of the hands and a need to shift positions for a moment or two every 30-45 minutes. The hypothetical questions were therefore proper. The court concludes that the ALJ did not misinterpret the VE's testimony.

The VE did testify that the hypothetical individual could perform Plaintiff's past work as a housekeeper within the limitations set forth in the ALJ's RFC finding. Therefore, given that the ALJ incorporated all substantial limitations which she ultimately found to exist into the hypothetical questioning of the VE, the ALJ's conclusion is proper.

## V. Conclusion

Although another ALJ might have concluded that Plaintiff's arthritic condition in her knees and hands is more severe, the ALJ's decision that these conditions allow for standing and frequent handling/fingering is supported by substantial evidence. The ALJ's RFC assessment must therefore stand. The ALJ's decision not to accord controlling weight to Dr. Conway's reports is not improper. The ALJ gave adequate weight to Plaintiff's depression in her RFC assessment. The ALJ conducted a thorough credibility determination that was not patently wrong. Finally, the ALJ asked proper hypothetical

questions of the VE that incorporated all of Plaintiff's impairments and properly applied the ALJ's answers. There was no reversible error in the assessment of Plaintiff's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Plaintiff is not entitled to relief in this action and the decision of the Commissioner of the Social Security Administration must be **AFFIRMED.** Judgment consistent with this Entry shall now issue.

**SO ORDERED** this 30th day of March 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Frederick J. Daley Jr.
DALEY DEBOFSKY & BRYANT
fdaley@ddbchicago.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov